UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY LIBERTUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-cv-01226-AGF |
| ) | |
| PEYTON KEENER HARRIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on self-represented plaintiff Timothy Libertus's application to proceed in the district court without prepaying fees and costs. The Court will grant plaintiff's application and assess an initial partial filing fee of $50.87. Furthermore, based on the allegations in the complaint, which must be taken as true, the Court finds plaintiff has stated a plausible claim for constitutional violations against defendants Peyton Keener Harris, Michael Thompson, Cooper Wells, Joshua Bowers, Thomas Craig, Ethan Jones, Andrew Brakefield, James Fox, Jarrett Sappington, Unknown Fischer, Caelon Upton, Paul Blair, Ashley Skaggs, and Unknown Crouch. The Court will order the Clerk of Court to issue process as to these defendants in their individual capacities. The Court will dismiss without prejudice defendants Taylor Bort, Martin Martinez, and Matthew Pultz for failure to state claim upon which relief may be granted.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a certified inmate account statement as required by 28 U.S.C. § 1915(b). The account statement shows that from April 28, 2022 to September 28, 2022 he received an average monthly deposit of $254.33. (ECF No. 2 at 3-7). Based on this financial information, the Court will assess an initial partial filing fee of $50.87, which is twenty percent of plaintiff's average monthly deposit. *See* 28 U.S.C. § 1915(b)(2).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without prepayment of fees and costs if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a self-represented plaintiff's complaint under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally

construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the pro se plaintiff that assumed facts that had not been pleaded).

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983 alleging defendants engaged in various forms of abuse and harassment from June 4, 2021 through July 20, 2021 while he was incarcerated at the Potosi Correctional Center ("PCC"). Plaintiff names as defendants sixteen correctional officers and case workers at PCC: Peyton Keener Harris, Michael Thompson, Taylor Bort, Cooper Wells, Joshua Bowers, Thomas Craig, Ethan Jones, Martin Martinez, Andrew Brakefield, James Fox, Jarrett Sappington, Unknown Fischer, Caelon Upton, Paul Blair, Matthew Pultz, Ashley Skaggs, and Unknown Crouch. He sues all defendants in both their official and individual capacities.

Plaintiff states that on June 4, 2021, officers at PCC were investigating an alleged telephone call plaintiff had made to a female Missouri Department of Corrections employee. There had been allegations that the two were having an affair. During this investigation plaintiff was transferred from the general population to administrative segregation. Plaintiff states that while he was being escorted to administrative segregation he was assaulted by Officer Keener Harris. As plaintiff stepped into his cell, Harris tripped him while he was still handcuffed. Then Harris shoved him into the back wall of his cell face first, slammed his face into the wall several times, and then

pushed him to the floor. Harris began punching plaintiff and kneeing him in the side. He yelled at plaintiff "NOT TO F*** WITH OUR FEMALES!" Harris then took plaintiff's left wrist, which was still in cuffs, and pulled it up behind his back and twisted it until it popped. Plaintiff said he suffered excruciating pain and felt his wrist pop. At this point, Sergeant Craig, who was watching this assault, told Harris to stop. Harris and Craig then strip searched plaintiff. While plaintiff was naked, he was told to bend over the toilet seat and jump up and down and until told to stop. Officer Harris said, "If only she could see you now." Plaintiff states that he was in need of medical attention after the assault, but did not receive it.

At lunch that day Harris told plaintiff's food server "I'll feed this one, it's a SPECIAL TRAY! I have a primal urge to protect my females and make sure nobody's plotting on them." Plaintiff refused the food tray fearing it had been tampered with.

For the following two days, plaintiff was denied soap, toilet paper, toothpaste, bedding, and a change of clothing. He states that he only ate packaged food and drink because his food trays were being tampered with. He states that multiple trays of food were covered in soap or other liquid, or covered in salt or other powder. Plaintiff states the staff falsely claimed plaintiff was on a hunger strike to explain plaintiff's loss of weight. Plaintiff asked for grievance forms and for medical treatment during this time.

During the night shifts, Officers Wells and Bowers kicked plaintiff's cell door loudly through each of their walkthroughs to wake plaintiff, approximately every 20 to 30 minutes.[1] Plaintiff feared for his safety and wanted to be assigned to a cell in view of a camera or to be moved to another house within the prison. He requested a suicide cell, knowing that these cells are under 24-hour surveillance. He spent two days in the suicide cell. On June 9, 2023, he was assigned

---

[1] Plaintiff refers to defendant Joshua Bowers as Joshua Bowyer and Joshua Browers throughout the complaint.

to a cell in 1 house. He continued to be denied meals. He finally saw a nurse about three weeks after the assault, and he had lost 13.4 pounds.

On June 29, 2021, he was moved to a different cell in 1 house. He spoke with mental health staff Ashley Skaggs about the assault, the food issues, the lack of medical treatment, and he showed her his swollen wrists.  Plaintiff said he received no response.

On July 3, 2021, plaintiff was assaulted again. He states that he was showering and washing his clothes in his cell. For privacy he had the window on his cell door "flagged to prevent nude exposure to female staff." He heard Officer Fischer call over his radio that there was an unresponsive prisoner in plaintiff's cell. Officers rushed to plaintiff's cell door. Plaintiff states that he came to his door, uncovered the window and cuffed up as soon as officers opened his food port to cuff him.

When officers opened the cell door plaintiff was cuffed and naked. Officers shoved plaintiff into his cell, into the shower wall, and onto the ground. They punched him while on the ground and then lifted him up and punched and kneed him. Then they jerked up his cuffed arms behind him. The officers were yelling "Don't Fuck with our females!" and "How do you like this?" Plaintiff states Sergeant Thompson assaulted him while Officers Fischer and Brakefield stood looking away. Thompson slammed plaintiff into the wall one last time. Then plaintiff was pulled out of his cell and shackled to a security bench for nearly two hours.

After this assault, officers stripped plaintiff's cell of its property. Plaintiff was given a suicide smock, although he was not suicidal and never threatened suicide. For the next three days, July 3 to July 5, 2021, he was placed in his regular cell on suicide watch. During this time, he states brown bag meals were delivered for breakfast, lunch, and dinner, but the bags were filled with hand soap. The food was inedible. Although on suicide watch, he was not seen by the mental health staff, which plaintiff states is policy.

The mental health staff saw plaintiff on the third day. On July 5, 2021, he was moved to a suicide cell, where he stayed a day before being placed back in his regular cell. Plaintiff states that during this time period, his meal trays were covered in hand soap or other liquid chemicals. Plaintiff states Officers Upton, Sappington, Fischer, Brakefield, and Sergeant Thompson continued to harass him, tampered with his food, and held his mail.

Plaintiff states that while at PCC he also was denied access to the courts. He alleges that he had a court date of June 23, 2021 for an evidentiary hearing in an active appeal, but was not allowed to contact his attorney before the hearing. Plaintiff states he was unable to contact his attorney until his transfer to South Central Correctional Center ("SCCC") on July 20, 2021. During this time, he wrote four letters to his attorney, all marked legal mail, but his attorney never received them. Plaintiff's court date was rescheduled to December 17, 2021.

At SCCC, plaintiff immediately filed a grievance regarding his treatment at PCC (PCC-21-1138). According to policy he had to wait 40 days for PCC to respond. After 40 days, however, plaintiff was told that PCC never received the grievance or, if they did receive it, it was misplaced. Plaintiff filed another grievances with PCC (PCC-21-1139) and then a third grievance (SCCC-21-1591) to ask about the first two. After his third filing, plaintiff's grievance regarding his treatment at PCC was processed, but it was deemed untimely. On appeal, plaintiff received a response that the complaint would be forwarded to the Employee Conduct Unit for investigation. Plaintiff states that at some point his appeal was denied because he could not provide any evidence of the assault and harassment at PCC despite PCC having plaintiff's medical records and other official documents. To the extent there is a lack of documentation, plaintiff said this is intentional. He said staff at PCC did not want to have complete records of plaintiff's treatment.

After he was transferred to SCCC, he received x-rays and pain medication. The x-rays revealed a broken shoulder bone. Plaintiff states that he had a broken middle finger and an

impacted and sprained wrist. For relief, he seeks an $20,000 in compensatory damages from each defendant, $200,000 in punitive damages, injunctive relief, and a declaration that defendants' conduct was unconstitutional.

## Discussion

1. <u>Conditions of Confinement</u>

Plaintiff alleges that he was subjected to a variety of unlawful conditions of confinement while incarcerated at PCC. Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982).

Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). A complaint for calculated harassment must state enough facts to show a pattern of calculated harassment, which means multiple incidents of harassment. *Id.*

*(a) Food Tampering*

The Eighth Amendment imposes a duty on officials to provide humane conditions of confinement, including insuring that prisoners receive adequate food. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). "A plaintiff may demonstrate violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). The deprivation of a few meals for a

limited time generally does not rise to the level of an Eighth Amendment violation. *See Roberts v. SECC*, No. 1:22-cv-0004-SRC, ECF No. 16 at 13-14 (E.D. Mo. Sept. 2, 2022) (citing cases).

Plaintiff alleges defendant Correctional Officers Harris, Wells, Bowers, Sappington, and Upton coated his food trays with liquid soap or salt for three weeks starting June 4, 2021. ECF No. 1-1 at 25. Sappington would also skip plaintiff's cell during meal times falsely claiming that he was on a hunger strike. Lieutenant Fox would come to plaintiff's cell and laugh and ask how the food was. Plaintiff states that he lost 13.4 pounds in these three weeks. For purposes of initial review, the Court finds that plaintiff has stated a plausible claim of unconstitutional conditions of confinement against defendants Harris, Wells, Boyer, Sappington, and Upton in their individual capacities.[2]

*(b) Death Threats*

In general, verbal threats or name calling is not actionable under 42 U.S.C. § 1983. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). More specifically, "a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience . . . or if the threat exerts coercive pressure on the

---

[2] In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In order to prevail on an official capacity claim, plaintiff would have to establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Plaintiff has not alleged such governmental liability, and therefore his official capacity claims against the defendants will be dismissed.

plaintiff and the plaintiff suffers the deprivation of a constitutional right." *Id.*; *Penn v. Arthur*, No. 4:22-CV-01067-MTS, 2022 WL 17961185, at *6 (E.D. Mo. Dec. 27, 2022).

The threats should be objectively credible. Objectively credible threats are those in which the threatening individual makes "concrete, affirmative efforts to make good on those threats." *Goodman v. Dakota County*, 2019 WL 6682164, *2 (D. Minn. Dec. 6, 2019) (internal quotations omitted) (citing *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008)). Concrete and affirmative efforts include, among other things, arming other inmates with weapons or attempting to bribe other inmates to assault plaintiff. *Id.*

Plaintiff alleges that he received numerous written death threats from defendants. He states Officer Wells would shake his door at night making statements like, "We're gonna get you," and "Don't go to sleep!" Wells would go to other offenders' cells and loudly offer to pay them either with money or extra food to assault plaintiff. "This activity continued for days, hours upon hours. He even got one other offender out loud to announce that he would kill me for an extra tray of food." ECF No. 1 at 18. Sergeant Jones told plaintiff that he was going to die and "made threats to [his] well being." Plaintiff states that Officer Sappington would deliver written messages telling plaintiff to "Kill Yourself" and "We're Gonna Stab You Bitch!"

He states that the Warden Blair ordered Officer Martinez to collect the written death threats from plaintiff's cell. "Those written death threats that he collected never were received by officials, or if they were he refused to report that they existed, further putting me in harms way." Plaintiff does not state who the written death threats came from. Although he does not state the number of death threats he received, he states there were several. Considered in the context of his prison life—assault, lack of medical care, tampered food, being awaken numerous times per night, no officer coming to his aid—these threats seem objectively credible. Liberally construed, the Court

finds that plaintiff has stated a plausible claims for unconstitutional conduct against Wells, Jones, and Sappington based on their alleged death threats.

        *(c)*       *Denial of Hygiene*

Plaintiff states that he was denied basic hygiene items including soap, toilet paper, toothpaste, bedding, and a change of clothing for two days following his assault on June 4, 2021. Following his second assault on July 3, 2021, he states that all the property was taken from his cell for three days while he was on suicide watch. Plaintiff alleges various officers were involved in this deprivation of property, including defendants Harris, Thompson, Bowers, Sappington, Upton, and Pultz.

Whether the deprivation of hygiene items constitute cruel and unusual punishment depends on whether it "deprive[s] inmates of the minimal civilized measure of life's necessities." *Howard v. Adkinson*, 887 F.2d 134, 137 (8th Cir. 1989). The Eighth Circuit has held there is "no absolute Eighth Amendment right not to be put in a cell without clothes or bedding." *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995). Additionally, not providing an inmate a toothbrush and toothpaste for a one-month period has been found not to be a constitutional violation. *Jones v. Price*, 2021 WL 2589132 (E.D. Mo. Jun. 24, 2021); *see also Scott v. Carpenter*, 24 F. App'x 645, 647-48 (8th Cir. 2001) (finding no denial of "minimal civilized measure of life's necessities" when prisoner was able to shower only fifteen times in six months including a twenty-eight-day period without a shower); *Jones-El v. Godert*, No. 2:18-cv-65-JMB, 2019 WL 6727492, **13-14 (E.D. Mo. Dec. 11, 2019) (finding unconstitutional deprivation of hygiene items where inmate denied toothbrush and toothpaste from November 17, 2017 through June 30, 2018 and plaintiff suffered treatment for pain, tooth decay, bleeding and infected gums, plaque build-up, foul breath, and the extraction of two teeth).

Based on the allegations, plaintiff was denied hygiene items for a two-day period and a separate three-day period. Stripping an inmate's cell of property is a common disciplinary action in prison and is routine for an offender on suicide watch. The Court finds that plaintiff has not stated a plausible claim of a constitutional violation arising out of the denial of his hygiene items during a nonconsecutive five-day period.

### (d) Lack of Medical Care and Mental Health Treatment

Plaintiff states that defendant Ashley Skaggs was a mental health worker who visited plaintiff daily while he was in a suicide cell or on suicide watch. Plaintiff states that he wrote her written requests for help, but she did not intervene or help after plaintiff's injuries or assault. Plaintiff states that Skaggs gave him a mental health form, but when plaintiff filled it out honestly, she returned and told plaintiff to "do it over without the true information I had completed."

As for Nurse Crouch, she received plaintiff's medical requests for assistance and x-rays for his injured hand, finger, wrist, and elbow. She refused to treat him for the injuries. Plaintiff was taken to medical on July 8, 2021 and Crouch "briefly glanced at my hands cuffed behind my back while on a bench and claimed 'nothing [is] wrong.'" She did not prescribe pain medication or refer plaintiff to treatment. Later x-rays done after plaintiff's transfer to SCCC revealed plaintiff's broken elbow and finger and his impacted and sprained wrist.

On initial review, the Court finds that plaintiff has stated a plausible claim for deliberate indifference to a serious medical need against defendants Skaggs and Crouch in their individual capacities.

### (e) Not Allowing Sleep

Plaintiff alleges Officers Wells and Bowers would kick his cell door loudly every 20 to 30 minutes throughout the night during their walk throughs, awakening him. "Sleep deprivation has long been recognized as an effective tool of torture, *Reck v. Pate*, 367 U.S. 433 (1961), and it is

clearly established that conditions designed to prevent sleep may violate the Eighth Amendment." *Roos v. Clark*, No. 4:19-cv-00895 BRW-PSH, 2002 WL 4229981, *9 (E.D. Ark. Aug. 26, 2022) (internal quotation omitted); *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (collecting cases) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.")

Plaintiff has stated a plausible claim of an Eighth Amendment violation based on Officers Wells and Boyer repeatedly waking him throughout the night. The Court will issue process on these defendants in their individual capacities.

2. Excessive Force

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges he was assaulted by correctional officers Harris, Brakefield, and Thompson on June 4, 2021 and July 3, 2021. In both instances the assault occurred when plaintiff was cuffed and defenseless. In one instance an officer broke plaintiff's elbow. The Court finds on initial review that plaintiff has stated a plausible claim that defendants Harris, Brakefield, and Thompson used excessive force in violation of the Eighth Amendment. The Court will issue process on these defendants in their individual capacities.

3. Failure to Intervene

In addition to protecting inmates from the use of excessive force, the Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). Under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

In his complaint, plaintiff states defendant Craig watched while Officer Harris assaulted plaintiff on June 4, 2021. He alleges Officers Brakefield and Fischer watched while Officer Thompson assaulted him on July 3, 2021. None of the officers intervened or reported the assaults. Liberally construed, plaintiff's complaint states a plausible claim against these defendants for failing to intervene. The Court will order the Clerk of Court to issue process on defendants Craig, Brakefield, and Fischer in their individual capacities.

4. Legal Mail

Claims based on the opening of a prisoner's legal mail may be analyzed as violations of either the Sixth Amendment right to counsel or the Fourteenth Amendment right to court access. *Thomsen v. Ross*, 368 F. Supp. 2d 961, 974. "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted

in actual injury, that is, the hinderance of a nonfrivolous and arguably meritorious underlying legal claim. To prove actual injury, a prisoner must demonstrate a nonfrivolous legal claim was frustrated or impeded." *Jones-El v. Godert*, No. 2:18-CV-65-JMB, 2019 WL 6727492, at *10 (E.D. Mo. Dec. 11, 2019) (internal citations omitted).

Plaintiff alleges defendants Martin Martinez and James Fox participated in the prevention of plaintiff getting his regular and legal mail. Plaintiff alleges that from June 4, 2021 to June 23, 2021, he was unable to contact his attorney regarding an evidentiary hearing on a criminal appeal. He states that he wrote four letters to his attorney during this time, but none were received. The evidentiary hearing was rescheduled and occurred on December 17, 2021. Plaintiff does not allege that his appeal was prejudiced by this delay. Without any allegation that defendants' conduct prejudiced plaintiff's legal proceeding, he cannot state a claim for failure to provide access to the courts. For this reason, on initial review, the Court will dismiss these claims.

5. Supervising Officers

A supervising officer may be liable for the actions of his subordinates when "he (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to" plaintiff. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012).

Plaintiff alleges his family had daily contact Warden Paul Blair, and Blair "knew I was being mistreated for over a month and did nothing to stop it, until I was ultimately transferred weeks after continued assaults and torturous treatment." Plaintiff also alleges Blair knew of the death threats to plaintiff because he had sent an officer to plaintiff's cell to collect them.

Plaintiff states that Lieutenant James Fox would come to his cell asking how the food was. He states that Fox "was in charge of many of the offices that were tormenting me and he also participated in it himself, as well as helping to spread the 'unofficial' standing order to torture and

injure me." Based on the allegations, and construed liberally, the Court finds that plaintiff has stated a plausible claim against defendants Blair and Fox for failure to supervise their subordinates.

    6.  <u>Defendants Taylor Bort, Martin Martinez, and Matthew Pultz</u>

Plaintiff's complaint fails to state a claim for which relief may be granted as to defendants Taylor Bort, Martin Martinez, and Matthew Pultz. "In a claim under § 1983, there must be evidence of a causal connection between the misconduct complained of and the official sued." *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002). Plaintiff has not established a causal connection between the alleged constitutional violations and these defendants. The Court will dismiss without prejudice defendants Taylor Bort, Martin Martinez, and Matthew Pultz.

**Motions to Supplement Complaint**

After filing this case, starting on December 12, 2022, plaintiff has filed numerous letters to the Court attempting to supplement his complaint to add more allegations regarding the SCCC mailroom. This Court does not have jurisdiction over § 1983 actions arising out of activity occurring within the Western District of Missouri, which is where SCCC is located. *See* 28 U.S.C. § 105(b)(4). These cases would be transferred to the District Court for the Western District of Missouri. Additionally, these allegations are premature. Based on the attachments to plaintiff's filings, he had not completed the administrative review process on these claims prior to filing this suit. His claims arose from December 2022 through February 2023, and may be ongoing. For these reasons, the Court will deny plaintiff's motion to supplement the complaint.

**Motion for Appointment of Counsel**

Finally, plaintiff's motion for appointment of counsel will be denied without prejudice. There is no constitutional or statutory right to appointed counsel in civil cases. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). To determine whether to appoint counsel, the Court considers several factors, including whether: (1) the plaintiff has

presented non-frivolous allegations supporting his or her prayer for relief; (2) the plaintiff will substantially benefit from the appointment of counsel; (3) there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will deny plaintiff's motion for appointment of counsel without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $50.87 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Peyton Keener Harris, Michael Thompson, Cooper Wells, Joshua Bowers, Thomas Craig, Ethan Jones, Andrew Brakefield, James Fox, Jarrett Sappington, Unknown Fischer, Carlos Upton, Paul Blair, Ashley Skaggs, and Unknown Crouch in their individual capacities.

**IT IS FURTHER ORDERED** that defendants Taylor Bort, Martin Martinez, and Matthew Pultz are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement the complaint is **DENIED**. [ECF No. 5]

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED without prejudice**. [ECF No. 3]

An order of partial dismissal will accompany this memorandum and order.

Dated this 30th day of May, 2023.

                                       _____
                                       AUDREY G. FLEISSIG
                                       UNITED STATES DISTRICT JUDGE