UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY LIBERTUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-01226-AGF |
| | ) |
| PEYTON KEENER HARRIS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Joshua Bowers, Thomas Craig, Andrew Brakefield, James Fox, Jarrett Sappington, Caelan Upton, Paul Blair, Peyton Keener-Harris, Michael Thompson, Cooper Wells, Ethan Jones, and Kenneth Fischer's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 16 and 22). The motions are fully briefed and ready for disposition. For the following reasons, defendants' motions to dismiss are denied.

**Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may assert as a defense the plaintiff's "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*,

1

925 F.3d 955, 962 (8th Cir. 2019).

The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). However, "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has presented "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

When evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "[I]f the essence of an allegation is discernible...then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

**Background**

On November 17, 2022, plaintiff filed this § 1983 suit. The 72-page complaint and accompanying exhibits allege constitutional violations against 17 correctional officers at Potosi Correctional Center ("PCC"). On May 30, 2023, the Court conducted its initial review of the complaint pursuant to § 1915(e)(2)(B). The Court issued process on the complaint as to defendants Peyton Keener Harris, Michael Thompson, Cooper Wells, Joshua Bowers, Thomas Craig, Ethan Jones, Andrew Brakefield, James Fox, Jarrett Sappington, Unknown Fischer, Carlos Upton, Paul

Blair, Ashley Skaggs, and Unknown Crouch in their individual capacities. *See* ECF No. 12.

## **The Complaint**[1]

Plaintiff brings this action under 42 U.S.C. § 1983 alleging defendants engaged in various forms of abuse and harassment from June 4, 2021 through July 20, 2021 while he was incarcerated at PCC. Plaintiff states that on June 4, 2021, officers at PCC were investigating an alleged telephone call plaintiff had made to a female Missouri Department of Corrections employee. There had been allegations that the two were having an affair.

During this investigation plaintiff was transferred from the general population to administrative segregation. Plaintiff states that while he was being escorted to administrative segregation he was assaulted by Officer Keener Harris. As plaintiff stepped into his cell, Harris tripped him while he was still handcuffed. Then Harris shoved him into the back wall of his cell face first, slammed his face into the wall several times, and then pushed him to the floor. Harris began punching plaintiff and kneeing him in the side. He yelled at plaintiff "NOT TO F*** WITH OUR FEMALES!" Harris then took plaintiff's left wrist, which was still in cuffs, and pulled it up behind his back and twisted it until it popped. Plaintiff said he suffered excruciating pain and felt his wrist pop. At this point, Sergeant Craig, who was watching this assault, told Harris to stop. Harris and Craig then strip searched plaintiff. While plaintiff was naked, he was told to bend over the toilet seat and jump up and down until told to stop. Officer Harris said, "If only she could see you now." Plaintiff states that he was in need of medical attention after the assault, but did not receive it.

---

[1] The summary of the complaint is taken from the Court's prior Memorandum and Order dated May 30, 2023. ECF No. 12.

At lunch that day Harris told plaintiff's food server, "I'll feed this one, it's a SPECIAL TRAY! I have a primal urge to protect my females and make sure nobody's plotting on them." Plaintiff refused the food tray fearing it had been tampered with.

For the following two days, plaintiff was denied soap, toilet paper, toothpaste, bedding, and a change of clothing. He states that he ate only packaged foods and drinks because his food trays were being tampered with. He states that multiple trays of food were covered in soap or other liquid, or covered in salt or other powder. Plaintiff states the staff falsely claimed plaintiff was on a hunger strike to explain plaintiff's weight loss. Plaintiff asked for grievance forms and for medical treatment during this time.

During the night shifts, Officers Wells and Bowers kicked plaintiff's cell door loudly through each of their walkthroughs to wake plaintiff, approximately every 20 to 30 minutes. Plaintiff feared for his safety and wanted to be assigned to a cell in view of a camera or to be moved to another house within the prison. He requested a suicide cell, knowing that these cells are under 24-hour surveillance. He spent two days in the suicide cell. On June 9, 2021, he was assigned to a cell in 1 house. He continued to be denied meals. He finally saw a nurse about three weeks after the assault, and he had lost 13.4 pounds.

On June 29, 2021, he was moved to a different cell in 1 house. He spoke with mental health staff Ashley Skaggs about the assault, the food issues, the lack of medical treatment, and he showed her his swollen wrists. Plaintiff said he received no response.

On July 3, 2021, plaintiff was assaulted again. He states that he was showering and washing his clothes in his cell. For privacy he had the window on his cell door "flagged to prevent nude exposure to female staff." He heard Officer Fischer call over his radio that there was an

4

unresponsive prisoner in plaintiff's cell. Officers rushed to plaintiff's cell door. Plaintiff states that he came to his door, uncovered the window and cuffed up as soon as officers opened his food port to cuff him.

When officers opened the cell door plaintiff was cuffed and naked. Officers shoved plaintiff into his cell, into the shower wall, and onto the ground. They punched him while on the ground and then lifted him up and punch and kneed him. Then they jerked up his cuffed arms behind him. The officers were yelling "Don't Fuck with our females!" and "How do you like this?" Plaintiff states Sergeant Thompson assaulted him while Officers Fischer and Brakefield stood looking away. Thompson slammed plaintiff into the wall one last time. Then plaintiff was pulled out of his cell and shackled to a security bench for nearly two hours.

After this assault, officers stripped plaintiff's cell of its property. Plaintiff was given a suicide smock, although he was not suicidal and never threatened suicide. For the next three days, July 3 to July 5, 2021, he was placed in his regular cell on suicide watch. During this time, he states brown bag meals were delivered for breakfast, lunch, and dinner, but the bags were filled with hand soap. The food was inedible. Although on suicide watch, he was not seen by the mental health staff, which plaintiff states is prison policy.

The mental health staff saw plaintiff on the third day. On July 5, 2021, he was moved to a suicide cell, where he stayed one day before being placed back in his regular cell. Plaintiff states that during this time period, his meal trays were covered in hand soap or other liquid chemicals. Plaintiff states Officers Upton, Sappington, Fischer, Brakefield, and Sergeant Thompson continued to harass him, tampered with his food, and held his mail.

At SCCC, plaintiff immediately filed a grievance regarding his treatment at PCC (PCC-

21-1138). According to prison policy, he had to wait 40 days for PCC to respond. After 40 days, however, plaintiff was told that PCC never received the grievance or, if they did receive it, it was misplaced. Plaintiff filed another grievance with PCC (PCC-21-1139) and then a third grievance (SCCC-21-1591) to ask about the first two. After his third filing, plaintiff's grievance regarding his treatment at PCC was processed, but it was deemed untimely. On appeal, plaintiff received a response that the complaint would be forwarded to the Employee Conduct Unit for investigation. Plaintiff states that at some point his appeal was denied because he could not provide any evidence of the assault and harassment at PCC despite PCC having plaintiff's medical records and other official documents. To the extent there is a lack of documentation, plaintiff said this is intentional. He said staff at PCC did not want to have complete records of plaintiff's treatment.

After he was transferred to SCCC, he received x-rays and pain medication. The x-rays revealed a broken shoulder bone. Plaintiff states that he had a broken middle finger and an impacted and sprained wrist. For relief, he seeks $20,000 in compensatory damages from each defendant, $200,000 in punitive damages, injunctive relief and a declaration that defendants' conduct was unconstitutional.

## Discussion

Defendants move to dismiss plaintiff's § 1983 complaint stating that his claims are barred by a one-year statute of limitations, which they allege is the applicable statute of limitations for all Missouri prisoner actions, including those brought in federal court under 42 U.S.C. § 1983. Citing to a Missouri statute from 1990, § 516.145 R.S.Mo., and Missouri state court decisions, defendants argue that Missouri's one-year statute of limitations applies to plaintiff's § 1983 case.

The District Court for the Eastern District of Missouri has addressed defendants' argument before. In *Brown v. Hancock*, No. 4:10-cv-2045-HEA, 2011 WL 4528459, *2 (E.D. Mo. Sept. 29,

2011), this Court held that in a § 1983 action brought by a Missouri offender against a Missouri Department of Corrections employee, Missouri's five-year personal injury statute of limitations applies rather than the one-year statute of limitations set forth in § 516.145. *Id.* at *2; *see also Estate of Snyder v. Julian*, No. 1:11-cv-24-LMB, 2012 WL 2952934, *4 (E.D. Mo. Jul. 19, 2012) ("In Missouri, the relevant limitations period for general personal injury torts is five years. Accordingly, the applicable limitations period for claims brought under § 1983 is five years.") (citations omitted).

Defendants state that after *Brown*, this Court "recognized that §516.145 R.S.Mo. provides the applicable limitations period for §1983 claims brought by offenders." (Defs. Mot. at 5) (citing *Roberts v. Milburn*, No. 4:10-cv-1421-SNLJ, 2013 WL 4620614 at *10 n.2 (E.D. Mo. Aug. 29, 2013)). For this proposition, defendants cite to a footnote in *Roberts v. Milburn*, a habeas corpus case brought under § 2254. *Id.* The Court will quote the footnote and corresponding paragraph from *Roberts* in full, noting that this is the final substantive paragraph in the habeas corpus ruling:

> Finally, Roberts alleges that cruel and unusual punishment is used against him in violation of the Eighth Amendment and that he is in custody in the incorrect type of facility. [Docs. 11, 12] Roberts further alleges that he is denied adequate medical treatment and is in imminent danger of serious physical harm. [Doc. 6.] Disputes as to the conditions of confinement fall outside the core of federal habeas corpus review and may be brought in a separate action pursuant to 42 U.S.C. § 1983.[2] *See Nelson v. Campbell*, 541 U.S. 637, 643 (2007).
>
> > [2.] A claim under 42 U.S.C. § 1983 is the proper vehicle for allegations that the conditions imposed on a state prisoner violates the prisoner's federal constitutional rights. 42 U.S.C. § 1983. In Missouri, 42 U.S.C. § 1983 claims against the Department of Corrections or its employees acting in their official capacity must be filed within one year of the alleged constitutional violations. Mo. Rev. Stat. § 516.145; *Kinder v. Missouri Dept. of Corrections*, 43 S.W.3d 369, 372 (Mo. App. 2001).

7

*Roberts*, 2013 WL 4620614 at *10 n.2.

The authority on which defendants rely to assert a one-year statute of limitations applies to a Missouri inmate's § 1983 claim is found in dicta—more specifically, in a footnote to dicta—in an decade-old habeas corpus case. As dicta, the statement was not necessary to resolve the habeas claims and is not legally binding. In the years since the *Roberts* decision, this Court has never cited to *Roberts* as authority for applying a one-year statute of limitations to a §1983 case. Moreover, this Court has never ruled that a Missouri inmate suing under §1983 is subject to Missouri's one-year statute of limitations found in § 516.145.

Although defendants state that they "are unaware of any Eighth Circuit [case] addressing the correct statute of limitations for offenders bringing § 1983 actions in light of § 516.145 R.S.Mo," they do not mention that the Eighth Circuit has always applied Missouri's five-year statute of limitations for personal injury torts to actions brought under § 1983 by Missouri offenders. *See Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005) ("Missouri's five-year statute of limitations for personal injury actions, Mo. Rev. Stat. § 516.120(4) (2000), applies to all of [plaintiff's] section 1983 claims."); *see also Milliman v. Howell Cty., Mo.*, 2022 WL 5237993, *1 (8th Cir. Oct. 6, 2022) (per curiam) (same); *Hoelscher v. Huff*, 547 F. App'x 805, 806 (8th Cir. 2013) (per curiam) (same).

In accordance with the prior rulings of this Court and the United States Court of Appeals for the Eighth Circuit, the Court finds Missouri's five-year statute of limitations for personal injury actions applies to plaintiff's § 1983 claims. For this reason, the Court will deny defendants' motions to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6) are **DENIED**. [ECF No. 16 and 22]

**IT IS FURTHER ORDERED** that defendants shall file their answers to plaintiff's complaint within the time allowed by the Federal Rules of Civil Procedure.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2023.